**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACK ZAUSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.: 16 CV 01308 |
| v. | ) | |
| | ) | Hon. Elaine E. Bucklo |
| DAVID SWEIS and SWEIS LAW FIRM, P.C. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

NOW COME the Defendants, David Sweis and Sweis Law Firm, P.C. (hereinafter referred to collectively as "Sweis"), and in support of their Motion to Dismiss the Complaint of Plaintiffs Jack and Terry Zausa ("the Zausas")[1] pursuant to Fed. R. Civ. Pro. 12(b)(6), state as follows:

## INTRODUCTION

On January 27, 2016, the Zausas filed a complaint against Sweis alleging that they suffered damages stemming from Sweis' representation of them with regard to both a foreclosure proceeding and a collection matter. In Count I of their complaint, the Zausas bring a claim against Sweis under the federal Truth in Lending Act ("TILA"). In Counts II and III, the Zausas bring state law claims for legal malpractice and breach of contract, respectively. Regarding their TILA claim, the Zausas allege that an attorney retainer agreement that they entered into with Sweis triggered a duty on the part of Sweis to make disclosures pursuant to TILA, and that Sweis

---

[1] While the case caption indicates that Jack Zausa is the only Plaintiff, the Complaint's allegations indicate that both Jack and Terry Zausa are Plaintiffs, and both Jack and Terry Zausa pray to the Court for relief.

failed to make those disclosures.  It is this TILA claim which serves as the basis for this Court's original jurisdiction over this matter pursuant to 28 U.S.C. §1331.

As explained more fully below, the Zausas fail to state a claim for which relief may be granted under TILA, and Count I of their complaint should be dismissed.  First, TILA does not apply to the retainer agreement between Zausa and Sweis.  The terms of the agreement make clear that the Zausas had no right to defer payment, and thus there was no extension of credit as required for TILA to apply.   Second, TILA requirements do not apply to attorney retainer agreements generally, because, with regard to such agreements, attorneys are not "creditors" as contemplated by the act. Third, there was no finance charge to be disclosed to the Zausas, and thus it is not even clear how Sweis could have violated TILA if it applied.  As a result, Count I of the Zausas' complaint should be dismissed. Additionally, as Zausa's TILA claim serves as the basis for this Court's original jurisdiction, upon dismissal of the TILA claim, the Court should decline to exercise supplemental jurisdiction as to the state law claims in Counts II and III.   The Court should therefore dismiss those two counts as well.

## PERTINENT FACTS ALLEGED IN THE ZAUSAS' COMPLAINT

David Sweis is an attorney admitted to practice law in Illinois.  (Doc. 1, ¶4).  The Zausas consulted with Sweis with regard to a mortgage foreclosure proceeding related to property the Zausas owned in Burr Ridge, Illinois ("the Property"), and with regard to the collection of a 2010 judgment entered in favor of the Zausas in a separate case.  (Doc. 1, ¶6).  Following the discussion, on May 13, 2013, the Zausas retained Sweis, at which time Jack Zausa signed a retainer agreement. (Doc. 1, ¶¶12-14, Doc. 1-1).

Pursuant to the terms of the retainer agreement, Zausa agreed to pay Sweis an initial retainer of $3,000.00 plus court costs. (Doc. 1-1).  The initial retainer reserved "a total of twelve

hours of any and all services" to be performed by Sweis, and was to be replenished upon exhaustion. (Id.)  Zausa also agreed that he would be responsible for any and all court costs and litigation expenses incurred or advanced by Sweis relating to the representation. (Id.)

The retainer agreement was terminable at will by either Zausa or Sweis. (Doc. 1-1). Zausa agreed to be liable to Sweis in *quantum meruit* for the reasonable value of any work performed prior to termination, and Zausa agreed to pay billing statements rendered to him for amounts due "upon receipt thereof." (Id.).  Zausa paid Sweis the intial retainer fee of $3,000.00 via a check drawn on an account in the name of LaSalle Street Financial, LLC (Check No. 2472). (Id.)

The Zausas' complaint brings three counts against Sweis.  In Count I, the Zausas allege that Sweis violated TILA.  Specifically, the Zausas allege that the May 13, 2013 retainer agreement was "an open-ended consumer contract" subject to TILA, and that Sweis violated TILA by failing to provide a TILA disclosure in connection with the agreement.  In Count II, the Zausas allege that Sweis is liable for attorney malpractice, and in Count III, the Zausas allege that Sweis is liable to them for breach of contract relating to the mortgage foreclosure and collection cases.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  In ruling on a 12(b)(6) motion to dismiss, a court must accept as true all of the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them.  Id. at 1521.  A court ruling on a motion to dismiss is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (1986).

3

In <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007), the United States Supreme Court articulated the standard of pleading required for a complaint to state a claim for relief and therefore survive dismissal pursuant to Federal Rule 12(b)(6). The Supreme Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations", a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. "Factual allegations must be enough to raise the Plaintiff's right to relief *above* the speculative level." <u>Id</u>. (Emphasis Added). In short, dismissal of a complaint is appropriate if the plaintiffs have not "nudged their claims across the line from conceivable to plausible." <u>Id</u>. at 570.

In ruling on a 12(b)(6) motion to dismiss, a court must accept as true all of the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them. <u>Gibson</u>, 910 F.2d at 1521. A court is not to consider documents or allegations extrinsic to the pleadings on a Rule 12(b)(6) motion. <u>GE Capital Corp. v. Lease Resolution Corp.</u>, 128 F.3d 1074, 1080 (7th Cir. 1997). The pleadings, however, include any written instruments attached to the complaint as exhibits. *See* Fed. R. Civ. Pro. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.").

**<u>ARGUMENT</u>**

**I.      Count I of the Zausas' Complaint Fails to State a Claim Because TILA is inapplicable.**

"Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against unfair credit billing and credit card practices.'" <u>Walker v. Wallace Auto Sales, Inc.</u>, 155 F.3d 927, 930 (7th Cir. 1998)

[quoting 15 U.S.C. § 1601(a)]. In order to effectuate this purpose, TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction. Id. Thus, the applicability of TILA hinges upon whether a creditor has extended credit to the consumer. Here, TILA cannot possibly apply to the retainer agreement between Zausa and Sweis. As explained more fully below, the agreement was not an extension of credit as it did not give Zausa a right to defer payment of any amounts due and owing Sweis under the agreement. Moreover, TILA does not apply to attorney retainer agreements, since, with regard to such agreements, attorneys are not "creditors" as contemplated by TILA. Finally, while the Zausas claim that Sweis failed to make disclosures under TILA, they fail to allege that Sweis ever imposed a finance charge upon them. As a result, Count I of the Zausa's complaint fails to state a plausible claim for which relief should be granted and should be dismissed.

**A. The retainer agreement between Zausa and Sweis did not constitute an extension of credit as the agreement did not give Zausa a right to defer any payments due and owing Sweis under the agreement.**

Pursuant to 15 U.S.C. § 1602(f), "[t]he term "credit" means the *right* granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." (Emphasis Added). Where the express terms of an attorney retainer agreement plainly manifest the attorney's right to prompt and full payment for all fees accrued, the client cannot be said to have a right to deferred payment and no credit has been granted. *See* Riethman v. Berry, 287 F.3d 274 (3rd Cir. 2002). In Riethman, the attorney retainer agreements in question provided for billing on a monthly basis. Bills were to be paid in full within thirty days, with an interest charge to be imposed on unpaid balances. The court, held that the agreements did not constitute extensions of credit as contemplated by either the Equal Credit Opportunity Act, or TILA. In so holding, the

court emphasized that the agreements plainly manifested the attorneys' right to prompt payment and therefore did not provide the client a right to defer payment, even though the attorneys often chose not to strictly enforce their right to prompt payment under the agreements. Id. at 277-279.

Here, nothing in the language of the retainer agreement provided the Zausas with any right to defer any payments due and owing Sweis under the agreement. In fact, the retainer agreement between Sweis and Zausa even more plainly manifested the attorney's right to prompt payment than did the agreements at issue in Riethman. The agreement required a $3,000.00 retainer to be paid up front and then replenished upon exhaustion. That is the opposite of a right to defer payment, as it is a requirement that payment be made in advance for any amounts due Sweis under the agreement. Moreover, the agreement provided that Zausa was to pay any billing statements rendered to him "upon receipt thereof." There is nothing in the language of the agreement that could be construed to give Zausa any right of deferred payment. Therefore, in no way can it be said that entry into the agreement was tantamount to a grant of consumer credit, and Zausa could not reasonably have believed that he was receiving the equivalent of a bank loan or credit card such that TILA can be said to apply.

The Zausas allege that the retainer agreement was an "open-ended consumer contract that potentially, could be paid with monthly payments of over four installments." That allegation, however, is contradicted by the terms of the retainer agreement itself. To the extent that a written document attached to the complaint contradicts the allegations in the complaint, the written document controls. In re First Chicago Corp. Securities Litigation, 769 F.Supp. 1444, 1450 (N.D. Ill. 1991). Here, nothing in the agreement provided that amounts due and owing could be paid in installments. Rather, the agreement makes clear that payment on all invoices was due "upon receipt thereof".

Hypothetically speaking, after entering into the retainer agreement, Sweis could have voluntarily chosen to delay collection of any amounts due under the retainer agreement (which the Zausas do not allege that Sweis did). However, such a practice would not be equivalent to the Zausas having a "right" to deferred payment, and therefore such an election by Sweis would not constitute an extension of credit so as to make TILA applicable to the agreement. In this regard, an informal workout arrangement reached between two parties does not constitute an extension of "credit" so as to require disclosures under TILA, even if the workout involves more than four installments. Bright v. Ball Memorial Hospital Assoc., Inc., 616 F.2d 328, 334 (7th Cir. 1980). *See also* Riethman, 287 F.3d at 277-279 (The fact that a law firm may have had a practice of voluntarily choosing to delay collection of outstanding client fees and continuing to perform work on behalf of delinquent clients did not give those clients a unilateral right to defer payment where the retainer agreements in question plainly manifested the law firm's right to prompt and full payment).

What is controlling here, is the fact that the plain language of the retainer agreement provided Zausa with no right to deferred payment. *See* Riethman, 287 F.3d at 277-279. Whatever collection practices could have hypothetically been followed by Sweis, the Zausas had no right to deferred payment so as to make TILA applicable. As a result, there was no extension of credit, and the Zausas have no claim against Sweis under TILA.

**B. TILA requirements do not apply to attorney retainer agreements, because with regard to such agreements, attorneys are not "creditors".**

While it does not appear that any court within the Seventh Circuit has specifically addressed the issue of whether TILA was intended to apply to attorney retainer agreements like the one at issue here, in Skey & Bhattacharya LLC v. Ehsan, 110 A.3d 986 (2014), the Superior Court of New Jersey had occasion to address the issue and found that an attorney retainer

7

agreement does not fall within the purview of TILA. The court in Ehsan, whose reasoning is persuasive here, noted that the plain language of TILA confirms that "attorney retainer fee agreements are not and were not intended by Congress to be considered credit agreements." Ehsan, 110 A.3d at 990. As the court noted, an attorney does not match the meaning of a "creditor" under TILA, noting that under 15 C.F.R. § 1002.2(l), a "creditor" for purposes of TILA is:

> a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates. For purposes of §§ 1002.4(a) and (b), the term creditor also includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made. A person is not a creditor regarding any violation of the Act or this part committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction. The term does not include a person whose only participation in a credit transaction involves honoring a credit card.

> Id. at 989-990 [quoting 15 C.F.R. § 1002.2(l)].

The court explained that, as compared with an attorney, "[a] lender neither possesses the same characteristics nor holds the same duties to its client…A creditor's obligations then, are entirely different from those of an attorney." The court went on to state that "[t]hus, while attorneys operate law practices as businesses, they do not fall, in any imaginable sense into the category of a bank, credit card company, or a lender." Ehsan, 110 A.3d at 989-990.

Similarly, the attorney-client relationship that existed between the Zausas and Sweis is not analogous to that of either a bank, credit card company or lender and a debtor, and the attorney retainer agreement at issue here was not a loan or extension of credit against which the Zausas could borrow.

**C. There was no undisclosed finance charge.**

While the Zausas call the retainer agreement with Sweis "an open-ended consumer contract" it was not in fact "an "open end consumer credit plan" subject to disclosure requirements under TILA. Under TILA, an open end consumer credit plan is "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, *and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance*." 15 U.S.C. § 1602(j). (Emphasis Added). Here, the retainer agreement does not provide for a finance charge on any unpaid amounts, nor do the Zausas allege that Sweis subsequently levied a finance charge on any unpaid balance. This is yet another reason why the retainer agreement is not subject to disclosure requirements under TILA.

Moreover, even *assuming arguendo* that the retainer agreement were subject to disclosure requirements under TILA, it is impossible to see what exactly Sweis failed to disclose that could possibly subject him to liability under TILA. The Zausas claim that "[n]o TILA disclosure was provided to Mr. and Zausa" (sic). However, TILA "focuses on the finance charge, designating it in most cases as the measurement of damages." Goldman v. First Nat. Bank of Chicago, 532 F.2d 10, 21 (7th Cir. 1976). "The imposition of a finance charge under an open end credit plan in which an inaccurate disclosure has been made is a necessary condition for the assessment of liability since it is this charge against which the accuracy of the disclosure must be measured." Id. Since Sweis never levied a finance charge on the Zausas, they cannot claim that he made an inaccurate disclosure regarding a finance charge, let alone claim that he completely hid a finance charge from them. Since there was no finance charge, the Zausas' complaint cannot be said to state a plausible claim against Sweis under TILA.

**II.     The Zausas' state law claims should be dismissed.**

This Court should decline to exercise jurisdiction over the Zausas' remaining state law claims because their federal claim under TILA is invalid.   Because this Court's original jurisdiction was established by the Zausas' TILA claim, the Court has only supplemental jurisdiction over the state law claims.   Pursuant to 28 U.S.C. § 1367(a), it is within the Court's broad discretion to decide whether to exercise supplemental jurisdiction when all other claims in which it maintained original jurisdiction have been dismissed.   RJW Mgmt. Co., Inc. v. BP Prod. N. Am., Inc., 672 F.3d 476, 479 (7th Cir. 2012).   The presumption is that if all federal claims drop out before trial, the court will relinquish federal jurisdiction over any supplemental state-law claims.   Id.   Here, there is no compelling reason for the court to address the state-law issues in question, and the Court should decline to exercise supplemental jurisdiction over the Zausas' state law claims for legal malpractice and breach of contract.

## CONCLUSION

Zausas' TILA claim fails to state a claim for which relief may be granted, and should be dismissed.   TILA did not apply to the retainer agreement between Zausa and Sweis.   The terms of the agreement make clear that the Zausas had no right to defer payment, and thus there was no extension of credit as required for TILA to apply.   Moreover, TILA was never even intended to apply to attorney retainer agreements like the one in question.  As a result, the Zausas' fail to state a claim for which relief may be granted under TILA and Count I of their complaint should be dismissed.  Additionally, as Zausa's TILA claim serves as the basis for this court's original jurisdiction, upon dismissal of the TILA claim, the Court should decline to exercise supplemental jurisdiction as to the state law claims in Counts II and III and dismiss those claims as well.

WHEREFORE, for all of the above-stated reasons, Defendants, David Sweis and Sweis Law Firm, P.C. respectfully pray that this Honorable Court dismiss Plaintiffs' Complaint Complaint without leave to amend and grant Defendants such further and additional relief as this Honorable Court deems just.

<div style="margin-left: 40%">

Respectfully submitted,

**DAVID SWEIS**
**and**
**SWEIS LAW FIRM, P.C.**


By:    /s/ Brian J. Olszewski
           One of Their Attorneys

</div>

Anthony G. Barone (#6196315)
abarone@baronelawgroup.com
Brian J. Olszewski (#6283673)
bolszewski@baronelawgroup.com
Barone Law Group, P.C.
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:    630-472-0864

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I filed Defendants' Memorandum In Support Of Motion to

Dismiss through the Court's CM/ECF system, which will cause electronic notification of this

filing to be sent to all counsel of record on March 3, 2016.


By:     /s/ Brian J. Olszewski
                Brian J. Olszewski


Anthony G. Barone (#6196315)
abarone@baronelawgroup.com
Brian J. Olszewski (#6283673)
bolszewski@baronelawgroup.com
Barone Law Group, P.C.
635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
Fax:    630-472-0864